

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAWAYNE BERGERON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 04-3190** |
| **B&J MARTIN, INC.** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that B&J Martin, Inc.'s motion for summary judgment is **GRANTED**. (Document #31.)

### I. BACKGROUND

Plaintiff Dawayne Bergeron seeks maintenance and cure from B&J Martin, Inc., his employer from May 12, 2003 to July 17, 2003, for respiratory problems he alleges began on B&J Martin's vessel, the M/V DUSTY DAWN, on July 17, 2003.

In a previous incident on January 2003, Bergeron was injured aboard the MARINE VICTORY while working for Inland Marine Management Company. Bergeron's breathing was affected when he inhaled paint fumes in an enclosed area while he painted the galley over a period of two days. At Garden Park Hospital, Albuterol was prescribed to alleviate his breathing difficulties. In a separate incident on April 2, 2003, Bergeron inadvertently drank the equivalent

```
___ Fee_____
___ Process_____
 X  Dktd_____
___ CtRmDep_____
___ Doc. No._____
```

of a shot glass of paint thinner, which a co-employee had stored in a Kentwood water bottle, and was treated at Our Lady of the Sea Hospital.[1]

When the supervisors at Inland Marine refused to give him further assignments, Bergeron attempted to find work with B&J Martin. His girlfriend contacted Daniel Delatte, her uncle, and Larry Richoux, her father, who were employed as captain and deckhand aboard the M/V DUSTY DAWN, and they suggested that Bergeron speak to Jimmie Martin, the owner of the vessel, about hiring him to work on their boat. Bergeron began work as a deckhand on May 12, 2003.

On July 17, 2003, Bergeron experienced shortness of breath while he pulled the slack and coiled the rope as the anchor was being raised.. His symptoms became worse, and he was treated at Meadowcrest Hospital. Bergeron has not returned to work at B&J Martin or performed any other gainful employment since that time.

Bergeron filed a complaint seeking maintenance and cure accruing from the date of the incident. B& J Martin filed a motion for summary judgment.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805,

---

[1] Bergeron filed suit against Inland Marine, asserting negligence under the Jones Act and unseaworthiness. The case was settled for $75,000.

809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## B.  McCorpen defense

B&J Martin contends that Bergeron is not entitled to maintenance and cure because he materially misrepresented his medical condition when he applied for employment.  Bergeron argues that there is a genuine issue of material fact because management and other personnel of B&J Martin were aware of his breathing problems and hired him anyway.

"A Jones Act employer is entitled to investigate a seaman's claim for maintenance and cure benefits."  Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005).  "An employer is allowed to rely on certain legal defenses to deny these claims, such as the injured seaman's willful concealment from his employer a preexisting medical condition.  Id. (citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547 (5th Cir. 1968)).  In order to establish a McCorpen defense, an employer must show that

> (1) the claimant intentionally misrepresented or concealed medical facts;
> (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and
> (3) a connection exists between the withheld information and the injury complained of in the lawsuit.

Id. (citing McCorpen, 396 F.2d at 548-49).  "The intentional concealment element does not

3

require a finding of subjective intent." Id. at 174. "Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information . . . satisfies the 'intentional concealment' requirement." Id. (quoting Vitcovich v. Ocean Rover O.N., 106 F.3d 411 (9th "Cir. 1997)).

**1. Intentional misrepresentation of medical facts**

B&J Martin contends that Bergeron failed to disclose that he was hospitalized on several occasions for breathing problems before he began working for B&J Martin. B&J Martin presents the following evidence of the accident report and forms and applications completed by Bergeron with no indication that he had a breathing problem.

The "Report of Marine Accident, Injury or Death" of July 17, 2003, describes Bergeron's casualty as "an asthma attack while on bow picking up anchor. . . due to a previous job on a tug where he accidently drank some paint thinner and painted [an enclosed area] without a mask and was hospitalized." Defendant's exh. R.[2]

---

[2] On May 6, 2004, Dr. Judd Shellito, Louisiana State University Health Sciences Center, examined Bergeron and reviewed medical records related to three incidents: the paint exposure on January 25, 2003, the solvent ingestion on April 2, 2003, and the exacerbation of obstruction pulmonary disease on July 18, 2003. Defendant's exh. L. Dr. Shellito diagnosed Bergeron with "Reactive Airways Dysfunction Syndrome (RADS)." The disorder is an asthma-like condition resulting from high intensity irritant exposures. Although Bergeron is a cigarette smoker, Dr. Shellito concluded that Bergeron was too young to expect this degree of airflow obstruction as a result of cigarette smoking alone. Further, he had no history of asthma or allergies. Dr. Shellito found that the cause of Bergeron's airway disease was solely the result of exposure to paint fumes in January 2003. Bergeron had a 35% respiratory impairment based on a "post bronchodilator FEV 1 that is 52% of predicted normal." Bergeron's prognosis was difficult to determine; however, he "will require continued therapy with bronchchodilators as well as anti-inflammatory agents."

On April 24, 2003, Bergeron completed an application for employment as a deckhand with B&J Martin and indicated that he was able to perform all of the enumerated tasks without accommodation.. Defendant's exh. N. On the "New Employee Questionnaire," Bergeron consistently answered "No" to all questions concerning any previous injury or disease listed on the questionnaire. Defendant's exh. O. In his deposition, Bergeron insists he denied previous injury because his condition was known to Martin and he was going to be hired anyway, "so why go through all the trouble." Bergeron deposition, p 154.

Celeste Matherne, a B&J Martin employee who assisted with pre-employment screening, stated in her affidavit that Bergeron did not mention a pre-existing history of breathing problems, asthma or hospitalization, other than for a broken leg, during the pre-employment interview process. Defendant's exh. U. Matherne is a registered nurse and was certain that she would have made notes concerning breathing problems and medication if Bergeron had told her. Matherne stated that Bergeron initially filled out the "New Employee Questionnaire," but she reviewed it with him in detail and added the notations indicating he had broken his leg ten years ago. She witnessed Bergeron's signature certifying that the information was true and correct.

On April 25, 2003, Bergeron signed a "Medication Authorization" form indicating that he was not taking any medication. Defendant's exh. P. On April 28, 2003, Bergeron submitted to a "Pre-placement Examination" at Lafourche Services, Inc. and completed a form on which he revealed no condition, hospitalization, or medication other than for his broken leg.

"[W[here the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the

5

disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." Brown v. Parker Drilling Offshore Corp., 410 F.3d at 173. The 'intentional concealment' element is an objective inquiry and does not require a finding of subjective intent. Id. at 174. "Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the 'intentional concealment' requirement." Id. (internal quotation and citation omitted).

B&J Martin solicited Bergeron's medical history through a questionnaire with the assistance of a registered nurse. Bergeron completed B&J Martin's form, that was designed to elicit information about his medical condition, and two additional forms without revealing his breathing problems and the necessity of medication. Bergeron's assertions regarding whether Martin or others knew of Bergeron's prior incidents are insufficient to raise a genuine issue of material fact because the McCorpen test does not turn on Bergeron's subjective intent or his credibility. Regardless of what Bergeron subjectively believed others knew, because, by his own admission, Bergeron failed to reveal the information when solicited, B&J Martin has established as a matter of law that Bergeron intentionally concealed his prior breathing problems.

**2. Materiality**

B&J Martin contends that Bergeron's misrepresentation was material to its hiring decision. B&J Martin argues that Bergeron would not have been hired if he had disclosed the injury resulting from the exposure to paint fumes and drinking paint thinner. Bergeron contends that his condition was not a factor in his hiring and that he received a verbal promise of a job from Jimmie Martin "if you think you can do the job" before he actually filled out any

6

paperwork.

Under the second prong of the McCorpen defense, "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." Brown v. Parker Drilling Offshore Corp., 410 F.3d at 175.

Jimmie Martin stated in his affidavit that Bergeron represented himself as a healthy person capable of performing the job, and he was never specifically told about the breathing problems. Defendant's exh. S. Martin further stated that "[i]f Dawayne Bergeron had mentioned prior incidents to me involving his inhaling paint fumes or drinking paint thinner while working for another boat company, he would not have been hired by B&J Martin, Inc."

Although Bergeron states that he spoke informally with Jimmie Martin about a job a month before he was hired, B&J Martin required that he complete the formal process of providing an application and a medical history and undergoing a physical examination before offering him the position. These requirements are calculated to ascertain the existence of any medical condition which may impact the applicant's ability to perform his job duties. Accordingly, the omission of any reference to his breathing problems from any of the forms required in the hiring process is a misrepresentation that was material to the hiring decision.

### 3. Causality

B&J Martin contends that there is a clear connection between the illness that Bergeron failed to disclose and the present disability for which he seeks maintenance and cure. B&J Martin argues that the medical records are replete with past incidents of shortness of breath and

other breathing difficulties, the same symptoms that Bergeron exhibited on July 17, 2003.

An intentional misrepresentation of medical facts which would have been material to a hiring decision is insufficient to overcome an obligation of maintenance and cure unless there is a connection between the withheld information and the injury which is eventually sustained. Brown v. Parker Drilling Offshore Corp., 410 F.3d at 175. "There is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred." Id. at 176.

Bergeron experienced the same breathing difficulties aboard the M/V DUSTY DAWN that began after his prior incidents with paint fumes and paint thinner. He testified that he continuously used Albuterol to assist his breathing from the date of his incident aboard the MARINE VICTORY through the date of the incident aboard the DUSTY DAWN, and to the present date. There is no evidence that Bergeron's condition is related to anything else that occurred aboard the M/V DUSTY DAWN while Bergeron was employed by B&J Martin. Therefore, B&J Martin has established a causal link between the concealed information and the episode that occurred on July 17, 2003.

## C. Manifestation

Alternatively, B&J Martin argues that Bergeron's breathing problems did not manifest themselves while he was in the service of the M/V DUSTY DAWN. Because B&J has established a McCorpen defense, the court need address the alternative argument.

### III. CONCLUSION

B&J Martin has established that Bergeron intended to conceal his medical condition, the

8

concealed facts were material to B&J Martin's decision to hire him, and there is a causal connection between the concealed information and the injury complained of in the suit to recover maintenance and cure. Accordingly, there are no genuine issues of material fact, and B&J Martin is entitled to summary judgment as a matter of law.

Houma, Louisiana, this __14__ day of October, 2005.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE